In re Jan V. KARLIN, Debtor.

Ted FOX, Appellant,

v.

Jan V. KARLIN, Appellee.

BAP No. CC–88–1032 MoPV.

Bankruptcy No. LA 86–10574–BR.

Adv. No. LA 86–2622–BR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 19, 1989.

Decided Aug. 29, 1989.

As Amended March 30, 1990.

---

Joseph W. Fairfield, Los Angeles, Cal., for appellant.

Jerrie S. Weiss, Westlake Village, Cal., for appellee.

### SUPPLEMENTAL OPINION

Before MOOREMAN, PERRIS and VOLINN, Bankruptcy Judges.

This appeal arises from a judgment in favor of the Debtor/appellee in which the bankruptcy court concluded that the appellant had failed to establish a "willful and malicious injury by the Debtor" for purposes of § 523(a)(6).

### FACTS

The following facts are essentially undisputed. The debtor is a Board Certified Plastic Surgeon, licensed to practice in California. After various consultations and at the request of the appellant, the debtor performed reconstructive facial surgery on the appellant in March 1984. Prior to the surgery, the appellant signed a "consent form" which reads in the pertinent part as follows:

> I specifically authorize Dr. Jan V. Karlin and/or his associates to take pre-operative and post-operative photographs of me. I specifically authorize and grant permission to him to utilize these photo-

graphs for any instructional or professional purposes, including, but not limited to, use within his medical practice, and for demonstration purposes for the benefit of prospective patients of Dr. Karlin's.

In 1985, the debtor hired Cheryl Hirsch, a public relations and marketing expert to help publicize his professional services. Ms. Hirsch began to prepare for publication, an article and photographs regarding the debtor's work. In order to do so, the debtor made his patients' charts and photographs available to Ms. Hirsch, and she selected the appellant's photographs for publication.

Before forwarding the article and copies of the photographs to "Faces International" magazine for publication, Ms. Hirsch gave the debtor the article and photographs for his review. Ms. Hirsch then forwarded the article and photographs to Faces International for publication. Prior to publication, however, the debtor contacted the appellant to determine whether the appellant would object to the publication of his pictures. When the appellant objected, the debtor contacted Ms. Hirsch who in turn contacted Faces International. It was agreed that Faces International would not publish the article or would use other pictures. Mistakenly, however, and without the knowledge of the appellant or the debtor, the article was published using the appellant's pictures. In April 1986, the appellant filed an action in state court alleging various causes of action. In June 1986, however, the debtor filed a Chapter 7 petition, whereupon the appellant filed a complaint alleging the non-dischargeability of his claim. After receiving all the evidence, the bankruptcy court concluded that the debtor's conduct was not a case of willful and malicious injury as contemplated by § 523(a)(6). The bankruptcy court orally ruled, in pertinent part, as follows:

I believe what the doctor's declaration says, happened and, in any case, I don't think even at worst from the doctor's standpoint, this is simply not a case of willful malicious injury as is contem-

plated by section 523(a)(6). At best it's a question of negligence.

.    .    .    .    .

This is simply not the type of debt that was contemplated by that. If anything, even in the State Court, I think basically what you have here—and you might have a good case—I'm not saying you wouldn't assuming you could show injury—of negligence, and that it appears to me at best, that's what we're dealing with here is a question of negligence, but I don't see that it's willful malicious injury.

On January 4, 1988, the bankruptcy court entered Findings of Fact and Conclusions of Law which found that "[debtor] did not possess the requisite intent to harm [appellant]," and concluded that "the debtor, Jan V. Karlin, lacking the intent required by Bankruptcy Code Section 523(a)(6), the debt is dischargeable [sic]." The instant appeal followed.

## DISCUSSION

This Panel will review findings of fact under the clearly erroneous standard "and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. Conclusions of law are reviewed *de novo*. *Anderson v. City of Bessemer*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The essence of the appellant's argument is that the bankruptcy court applied an incorrect standard in determining that his debt was not within the scope of "willful and malicious injury" as contemplated by § 523(a)(6) and that the debtor's conduct amounted to a violation of the debtor's fiduciary duty and, therefore, the debt is non-dischargeable under § 523(a)(4).

### Fiduciary Duty Under § 523(a)(4).

Although the complaint alleging the non-dischargeability of the underlying claim did set forth an allegation that the debtor had breached his fiduciary duty owed to the appellant, the bankruptcy court's findings and conclusions did not address this issue.

**322**

While the debtor admitted that a fiduciary duty was owed to the appellant through their doctor-patient relationship, this fact alone is insufficient to establish the non-dischargeability of a debt under § 523(a)(4). The Ninth Circuit has set forth the recognized rule that "the broad general definition of fiduciary—a relationship involving confidence, trust, and good faith—is inapplicable in the dischargeability context...." *In re Short,* 818 F.2d 693, 695 (9th Cir.1987). "Thus, constructive or implied trusts are excluded, but statutory trusts are not." *Id.* (citation omitted). California statutory law provides in the pertinent part:

> No provider of health care shall disclose medical information regarding a patient of the provider *without first obtaining an authorization....*

Cal.Civil Code § 56.10 (emphasis added). California Evidence Code § 994 also provides patients a privilege to prevent the disclosure of "confidential communications." Based on the above statutes, an issue arises of whether a statutorily created fiduciary duty existed under the circumstances of the instant case.

■ Although the above statutes were made reference to in the joint pre-trial statement under "Issues of Law," there is no indication in the record that this issue (whether the above statutory language creates a fiduciary duty for purposes of § 523(a)(4)) was raised by the appellant in the court below or addressed at trial. An issue not raised below cannot now be asserted on appeal. *In re Baldwin,* 70 B.R. 612, 617 (9th Cir. BAP 1987).

■ Moreover, even if we assume that a fiduciary duty for purposes of section 523(a)(4) does exist, it appears from the record before this Panel that the debtor did not breach the duty because he obtained an authorization from the appellant. The broad language of this authorization specifically permitted the debtor to use the pictures of the appellant for "any instructional or professional purposes." The use of the pictures at issue in this case falls within the scope of use for professional purposes. The record does not reflect that the

appellant contended, either in the court below or in its appellate briefs prior to oral argument, that the authorization was invalid under Cal.Civil Code § 56.11 or was invalid as a contract of adhesion. Given the appellant's failure to attack the validity of the authorization, his argument that the claim should be found nondischargeable under section 523(a)(4) is without sufficient basis.

### Willful and Malicious Injury Under § 523(a)(6).

■ The next issue is whether the bankruptcy court applied an incorrect standard in determining that the debtor's conduct did not amount to a "willful and malicious injury" under § 523(a)(6). The Ninth Circuit has adopted the recognized notion that for purposes of § 523(a)(6), "willful and malicious" means a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse *"even absent proof of a specific intent to injure."* *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986). Given the above language, it appears that the bankruptcy court applied an incorrect standard. The only finding set forth in the Findings of Fact states "[debtor] did not possess the requisite *intent to harm* [appellant]." (emphasis added). Whether, the debtor intended to harm the appellant is not relevant under the rule adopted in *Cecchini.* Rather, the issues are 1—whether the debtor committed a wrongful and intentional act, 2—whether such action produced harm, and 3—whether such action was without just cause or excuse.

Even assuming the existence of the first two factors, the undisputed facts support a conclusion that the debtor's action of allowing Ms. Hirsch to review the appellant's file was justified and excusable under the circumstances, sufficient to support the bankruptcy court's ruling. It is undisputed that the debtor had obtained a signed authorization from the appellant to use his photographs. The appellant's failure to attack the validity or scope of the authorization supports a determination that the debtor was justified in allowing Ms. Hirsch to

view appellant's file for purposes of preparing the article on the debtor.[1]

With regard to the publication of the appellant's picture in Faces International, the undisputed facts establish that once the debtor learned of the appellant's desire not to have the photographs used, Ms. Hirsch and in turn Faces International was notified not to use them.[2] Accordingly, there is sufficient evidence to support the trial court's implicit determination that the publication of the appellant's picture was *excusable* under all the circumstances of the instant case and, thus, the third element of a § 523(a)(6) cause of action does not exist.

Accordingly, the bankruptcy court's order holding the appellant's claim to be dischargeable is AFFIRMED.

VOLINN, Bankruptcy Judge, dissenting:

The majority has focused on whether there has been a violation of fiduciary duty under section 523(a)(4). Although a fiduciary relationship attends the furnishing of professional services by doctors, that is not the problem here.

The issue essentially is whether there was a tortious invasion of privacy. A patient is entitled to privacy not only by statute, Cal.Civ.Code § 56.10, but also by virtue of specific understandings, attaching to the relationship of doctor and patient as developed from ancient times.

The doctor obtained the consent of the patient to divulge aspects of treatment for "instructional or professional" purposes. The consent language does not come close to authorizing Karlin to be an advertisement. The doctor breached this understanding by releasing the information for his private economic gain. The evidence that he knew the difference is clear. After he had violated the agreement, he attempted to obtain the consent of the patient for having done what he was not supposed to do. He intentionally violated the patient's right to privacy by releasing the information to Ms. Hirsch for purely self-promotional purposes. He had intentionally ventured on to a slippery slope. That he tried to do what he could to arrest his fall should not exculpate him from the consequences of his intentional wrong.

The doctrine of *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986) is applicable. That he did not intend the harm does not render the tort unwillful or nonmalicious. This is not simply "a question of negligence" as stated by the trial court. The doctor intended to release the information for his own private ends, and, pursuant to this intention, placed it into the hands of a publicist who published before the doctor could reverse what he had intentionally set in motion.

The appellee's action was an invasion of privacy and a willful and malicious injury under California law. *See* Cal.Civ.Code § 3344 ("Any person who knowingly uses another's ... photograph ..., in any manner, ... for purposes of ... advertising or selling, or soliciting purchases of ... services, without such person's prior consent, ... shall be liable for any damages sustained by the person or persons injured as a result thereof.... Punitive damages may also be awarded to the injured party or parties...."); *Briscoe v. Reader's Digest Ass'n* 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34 (1971) (complaint for invasion of privacy by publishing plaintiff's name in connection with criminal activity eleven years after rehabilitated plaintiff's involvement stated a cause of action under the protection for privacy in section 1 of article I of the California Constitution, which was directed *inter alia* against the improper use of information properly obtained for a specific purpose); *see also Vassiliades v. Garfinckel's*, 492 A.2d 580 (D.C.1985) (although plastic surgeon had plaintiff patient's consent to use her "before" and "after" pictures to help other patients, evi-

---

[1]. In addition, the use of the photographs in a manner consistent with the authorization is not a wrongful act. In this regard, a tortious invasion of privacy did not occur because the appellant consented through the authorization form, to the initial disclosure of the photographs.

[2]. Under these circumstances, it is doubtful that the negligence of Faces International can be imputed to the debtor for purposes of establishing causation.

dence of his use of her photographs on television and in a department store was sufficient to support a claim for invasion of privacy, i.e. unreasonable public disclosure of private facts, citing the *Restatement (Second) of Torts* § 652(A); S.D. Warren & L.D. Brandeis, *The Right to Privacy*, 4 Harv.L.Rev. 193 (1890); W. Prosser, *Law of Torts* § 117 (4th ed. 1971)).

I respectfully dissent.