FARRIS, Circuit Judge:
 

 Jordan Alexander Lee-Benner appeals the bankruptcy court’s dismissal of his adversary action seeking a declaration that debtor Robert Gergely’s debt to him is nondis-chargeable. He also appeals the denial of his objection to discharge of Gergely’s debts, asserting error in certain evidentiary rulings. The Bankruptcy Appellate Panel affirmed both decisions. We have jurisdiction under 28 USC § 158(d). We affirm in part, reverse in part, and remand for further proceedings.
 

 I.
 

 Gergely, an obstetrician, performed an amniocentesis on Lee-Benner’s mother during her pregnancy with Lee-Benner. As a result of difficulties with the amniocentesis, Lee-Benner was blinded in one eye.
 

 After his birth, Lee-Benner brought suit against Gergely in state court. Lee-Benner claimed that Gergely misrepresented the need for the amniocentesis and that he performed the procedure negligently. The court entered judgment for Lee-Benner, awarding $780,282 in damages, but did not specify on which legal theory the judgment was rendered.
 

 Three years later, Gergely filed a Chapter 7 bankruptcy petition. Lee-Benner moved to have the amount due him, now nearly $1 million including post-judgment interest, declared nondischargeable under 11 USC § 523. He asserted three theories of nondis-chargeability: (1) that the debt resulted from a false representation; (2) that Gergely had committed fraud while acting in a fiduciary capacity; and (3) that Gergely had inflicted willful and malicious injury. The bankruptcy court dismissed Lee-Benner’s action.
 

 Lee-Benner also objected to discharge of Gergely’s debts under 11 USC § 727, alleging that Gergely had made misrepresentations in his bankruptcy petition. The bankruptcy court conducted a hearing in which all direct evidence was offered in writing before the hearing. Instead of offering evidence, Lee-Benner sought to make his case primarily in rebuttal, but was thwarted by several evidentiary rulings. The bankruptcy court denied the objection to discharge.
 

 The Bankruptcy Appellate Panel affirmed both the dismissal and the denial of the objection to discharge. The two appeals from the Bankruptcy Appellate Panel were consolidated for argument before us.
 

 II.
 

 We review decisions of the Bankruptcy Appellate Panel de novo,
 
 In re Alsberg,
 
 68 F.3d 312, 314,
 
 cert. denied,
 
 — U.S. -, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996), conducting an independent review of the bankruptcy court’s decisions.
 
 In re Roosevelt,
 
 87 F.3d 311, 314 (9th Cir.1996). We accept as true the allegations of the complaint for non-dischargeability,
 
 See Brown v. Felsen,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).
 

 Section § 523(a)(4) excepts from discharge debts “for fraud or defalcation while acting in a fiduciary capacity.” No facts establishing a fiduciary capacity were alleged in Lee-Benner’s complaint. “The meaning of ‘fiduciary’ in § 523(a)(4) is an issue of federal law.”
 
 Ragsdale v. Haller,
 
 780 F.2d 794, 796 (9th Cir.1986). “The broad, general definition of fiduciary — a relationship involving confidence, trust, and good faith — is inapplicable.”
 
 Id.
 
 The section applies only if an express trust pre-existed the
 
 *1451
 
 debt.
 
 In re Niles,
 
 106 F.3d 1456, 1459 (9th Cir.1997). No such express trust arises out of the doctor-patient relationship.
 
 See In re Karlin,
 
 112 B.R. 319, 322 (9th Cir. BAP 1990),
 
 aff'd
 
 940 F.2d 1534 (9th Cir.1991);
 
 In re Pouliot,
 
 196 B.R. 641, 650-51 (Bankr.S.D.Fl.1996). The dismissal of Lee-Benner’s claim under § 523(a)(4) was not error.
 

 Section 523(a)(6) excepts from discharge debts “for willful and malicious injury by the debtor to another entity.” This section applies to “wrongful act[s] done intentionally, which necessarily produce! ] harm.”
 
 In re Cecchini,
 
 780 F.2d 1440, 1443 (9th Cir.1986).
 

 Lee-Benner did not allege that Gergely acted maliciously. We recognize that malice can be proved without showing an intent to injure.
 
 In re Littleton,
 
 942 F.2d 551, 554 (9th Cir.1991) (per curiam). However, without such an intent it is “necessary to show that [Gergely] committed a wrongful act which necessarily produced harm.”
 
 Id.
 
 This standard requires that the act be “certain or almost certain to cause” the harm.
 
 Id.
 
 at 555 (quoting
 
 In re Littleton,
 
 106 B.R. 632, 637 (9th Cir. BAP 1989)). We have upheld a finding that debtors’ acts would not necessarily have produced harm, and concluded that “[e]onsequently, the debtors’ conduct was not malicious, as that term is used in § 523(a)(6).”
 
 Id.
 

 Nothing in
 
 In re Britton,
 
 950 F.2d 602 (9th Cir.1991), changed this standard. In
 
 Britton
 
 we observed that “it was foreseeable that injury would result” because “[m]alpractice can be seen as a foreseeable consequence of any medical procedure.”
 
 Id.
 
 at 605 (misrepresentation by debtor; malpractice by third party). However, we quoted the “necessarily causes harm” language of
 
 Littleton,
 
 and noted that
 
 Cecchini
 
 is our “leading case on this issue.”
 
 Id.
 
 Our conclusion in
 
 Britton
 
 that the debtor acted maliciously was derived from the particular facts of that case, including that the debtor had intentionally misrepresented himself to be a doctor.
 
 See id.
 
 at 603 (reciting facts);
 
 see also id.
 
 at 605 (regarding § 523(a)(2)(A) claim: “on these facts, there appears to be no policy argument for limiting the extent of ... liability”). To read the case otherwise would be to change the law, which a lone panel has no authority to do.
 
 Cf. In re Walker,
 
 48 F.3d 1161, 1164 & n. 3 (11th Cir.1995) (noting that if
 
 Britton
 
 changed the law it created a split with six other circuits) (citing cases and adopting majority rule).
 

 Malpractice was not certain or almost certain to occur. Lee-Benner therefore failed to allege that Gergely acted maliciously. Dismissal of the claim under § 523(a)(6) was not error.
 

 III.
 

 Lee-Benner appeals several evidentiary rulings of the bankruptcy court. Each ruling arose out of the bankruptcy court’s pretrial order:
 

 1. (a) Except as herein provided, each party shall present the testimony of all its witnesses through declarations of said witnesses ____
 

 (b) The only oral testimony which may be offered at trial by a party through its witnesses will be
 
 strictly
 
 limited to rebuttal testimony.
 

 (c) If a portion of a witness’ declaration concerns an exhibit to be admitted into evidence at trial, the exhibit must be attached to the declaration.
 

 (d) If a party is unable to obtain a declaration of a witness, counsel for that party shall file a declaration stating the name of the witness and a detailed summary of the expected testimony and why counsel was unable to obtain the witness’ declaration.
 

 (emphasis in original). The order also contained a schedule for submitting declarations and exhibits.
 

 Lee-Benner submitted no exhibits, but only a three-page declaration, prepared by an accountant who had reviewed Gergely’s records. Lee-Benner’s trial brief alluded to evidence other than that contained in the declaration but his sole submission under the pretrial order was the three-page declaration.
 

 Gergely (1) pointed out that Lee-Benner had not submitted exhibits or other evidence to support many of his allegations; and (2) bifurcated his opposing declaration, captioning the second half “Opposition to Insinuations in Trial Brief.”
 

 
 *1452
 
 Lee-Benner did nothing to cure the deficiency. At trial the bankruptcy court made several evidentiary rulings based on the record.
 

 We review the bankruptcy court’s evi-dentiary rulings for abuse of discretion.
 
 In re Sternberg,
 
 85 F.3d 1400, 1408 (9th Cir.1996).
 

 A
 

 Lee-Benner had hoped to examine Gergely as part of his (Lee-Benner’s) case in chief. The court held that Lee-Benner should have submitted a declaration from Gergely under part 1(a) of the pretrial order, or a 1(d) declaration from counsel explaining why a 1(a) declaration could not be obtained.
 

 The pretrial order required written declarations in lieu of direct oral evidence. It was a valid order.
 
 In re Adair,
 
 965 F.2d 777, 779 (9th Cir.1992). Lee-Benner did not follow that procedure. The bankruptcy court did not abuse its discretion in adhering to the requirements of its pretrial order.
 

 Lee-Benner also sought to introduce documentary evidence as a foundation for the testimony of his expert as part of his case in chief. The court ruled that this would violate the requirement that exhibits be attached to the appropriate declaration.
 

 Lee-Benner argues that the evidence should have been admitted because it was listed on the parties’ joint pretrial exhibit list The exhibit list is irrelevant. The pretrial order established a procedure for introducing documentary evidence. Lee-Benner’s failure to follow that procedure was fatal to his introduction of evidence.
 

 B
 

 At the close of Lee-Benner’s case in chief, the court permitted Gergely to withdraw the portion of his declaration captioned “Opposition to Insinuations in Trial Brief.” That withdrawal effectively limited the scope of cross-examination.
 

 Although Gergely did not specifically reserve the right to withdraw the second portion of his declaration, such a reservation was implicit in Gergel/s statement that he did “not mean to waive his objections that the insinuations should be totally disregarded for Plaintiffs failure to submit evidence.” Gergely explained that he did not know how best to respond to Lee-Benner’s failure to present an affirmative case. Lee-Benner should have cured his failure to comply with the pretrial order when that failure was brought to his attention. We find no abuse of discretion in allowing Gergely to withdraw the declaration.
 

 Lee-Benner attempted to rebut the remaining portion of Gergely’s declaration with oral testimony of witnesses and with documentary evidence. The court did not admit the evidence, explaining that it should have been submitted as reply declarations and attached exhibits.
 

 The Rules of Evidence allow a trial court to:
 

 exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time.
 

 FRE 611(a). Requiring evidence to be presented by declaration is “an accepted and encouraged technique for shortening bench trials” that is consistent with Rule 611(a)(2).
 
 Adair,
 
 965 F.2d at 779 (quoting
 
 Phonetele, Inc. v. American Telephone & Telegraph Co.,
 
 889 F.2d 224, 232 (9th Cir.1989)). And requiring evidence responding to an opposing witness’s declaration to be submitted prior to trial is also consistent with the need to ascertain the truth. The opposing witness can still be cross-examined regarding the contradictory evidence, and the court can assess his demeanor during that cross-examination. If the testimony is false, that falsity will be revealed by the reply evidence and related cross-examination.
 

 The pretrial order permitted oral cross-examination. It therefore “preserve[d] an opportunity for the judge to evaluate the declarant’s demeanor and credibility.”
 
 Id.
 
 The requirement that the evidentiary basis for that cross-examination be submitted before trial merely promoted efficient and accurate factfinding. Lee-Benner did not comply with that requirement. The court did not abuse its discretion.
 

 
 *1453
 
 IV.
 

 The bankruptcy code excepts from discharge “any debt ... for money ... to the extent obtained by ... false pretenses, a false representation, or actual fraud.” 11 USC § 523(a)(2)(A). Lee-Benner alleged in his claim for nondischargeability that Gergely intentionally misrepresented the need for an amniocentesis.
 

 Gergely argues that Lee-Benner’s theory of fraud is inconsistent "with § 523(a)(2)(A). He contends that the debt is not for money obtained by fraud, but for damages resulting collaterally from an alleged fraud. Since the statute covers money “obtained by” fraud, Gergely argues that it does not apply to the facts alleged.
 

 Gergely’s literal reading of § 523(a)(2)(A) is inconsistent with our case law.
 
 See In re Levy,
 
 951 F.2d 196, 198 (9th Cir.1991) (section 523(a)(2)(A) “limits nondis-ehargeability to the amount of benefit to the debtor or loss to the creditor the act of fraud itself created”). An action for nondischarge-ability under § 523(a)(2)(A) requires only: (1) a representation; (2) falsity; (3) scienter; (4) reliance; and “(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.”
 
 In re Britton,
 
 950 F.2d at 604. Malpractice is a foreseeable result of any medical procedure,
 
 id.
 
 at 604-05, and the fifth element can be proved if the debtor fraudulently induced the creditor to undergo a procedure that was then negligently performed.
 
 Id.
 
 at 605 (holding bankruptcy court’s finding of proximate causation not to be clearly erroneous). Lee-Benner alleged damage from negligent performance of a procedure undergone because of intentional misrepresentation. That was sufficient. His claim should not have been dismissed.
 

 Gergely’s alternative argument that any alleged misrepresentation was made only to, and relied on only by, Lee-Benner’s mother is advanced because Lee-Benner, not his mother, is the creditor contesting discharge-ability. We understand but reject the argument.
 

 We have stated that § 523(a)(2)(A) requires misrepresentations made “with the intention and purpose of deceiving
 
 the creditor,”
 
 on which
 
 “the creditor
 
 relied.”
 
 Id.
 
 at 604 (emphasis added). However, we have never considered whether for bankruptcy purposes an unborn child can claim fraud for representations made to his mother that damage him.
 

 We are satisfied that under state law Lee-Benner could have stated such a fraud claim. California courts allow recovery for negligence occurring before a plaintiffs birth where damage to the unborn child was foreseeable.
 
 See, e.g., Turpin v. Sortini,
 
 31 Cal.3d 220, 230, 182 Cal.Rptr. 337, 643 P.2d 954 (1982) (“wrongful life”). The California Supreme Court has also stated in dictum that:
 

 [I]t appears anomalous to deny recovery simply because it was not possible for the “child-to-be” to make a choice. In the preconception or fetal stage, as in childhood, it is parents who nearly always make medical choices to protect their children’s interests.
 

 Id.
 
 at 234 n. 9, 182 Cal.Rptr. 337, 643 P.2d 954. This reasoning applies at least as well to fraud as to negligence. Gergely has cited no contrary authority. If Lee-Benner has standing to bring an otherwise-traditional fraud claim under California law, then that claim would be for fraud within § 523(a)(2)(A).
 

 Gergely next argues that Lee-Ben-ner did not bring a fraud action before the applicable California limitations period expired. However, the expiration of a state statute of limitations on fraud actions does not affect an action for nondischargeability if there is a valid judgment. In construing dischargeability under § 17 of the former Bankruptcy Act, we rejected the argument that Gergely now presents: “[The creditor] is not seeking a new money judgment based on fraud; he is litigating the issue of discharge-ability ..., and the timeliness of the petition is governed by the Bankruptcy rules.”
 
 Matter of Gross,
 
 654 F.2d 602, 604 (9th Cir.1981). We followed
 
 Gross
 
 in
 
 In re Daley,
 
 a case decided under § 523. 776 F.2d 834, 837-38 (9th Cir.1985). More recently, the Tenth Circuit reached the same conclusion:
 

 [T]he question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limita
 
 *1454
 
 tions periods established by bankruptcy law. In this case, the debt has already been established, so the state statute of limitations is immaterial.
 

 In re McKendry,
 
 40 F.3d 331, 337 (10th Cir.1994).
 

 The law has not changed since
 
 Gross
 
 and
 
 McKendry.
 
 Lee-Benner’s debt is established. The state limitations period for fraud actions is irrelevant to the dischargeability of an established debt.
 

 We therefore reverse the dismissal of Lee-Benner’s claim for nondischargeability under § 523(a)(2)(A), and remand so that Lee-Ben-ner may attempt to show that Gergely’s debt to him arose from fraud. We affirm the dismissal of Lee-Benner’s other nondis-ehargeability claims, and the denial of objection to discharge.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.