William KUNTZ, III, Plaintiff,

v.

SEA EAGLE DIVING ADVENTURES CORPORATION; Breeze Hawaii Diving Adventures Corporation, Defendants.

Civil No. 00–00023 SOM/KSC.

United States District Court,
D. Hawai'i.

March 9, 2001.

Patrick F. McTernan, Cronin, Fried, Sekiya, Kekina, & Fairbanks, Honolulu, HI, for Plaintiffs.

Richard A. Lesser, Lesser & Associates, Redondo Beach, CA, for Defendants.

### ORDER DENYING MOTION FOR LEAVE TO PRESENT LIVE DIRECT TESTIMONY

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiff William Kuntz III ("Kuntz") seeks relief from this court's civil bench trial procedures, which, in most cases, require that direct testimony be presented in the form of affidavits or declarations, with witnesses subject to live cross-examination and live redirect examination ("Declarations Procedure"). *See* Appendix A. Defendants do not oppose the motion, but the court nevertheless denies it. Kuntz has not met his burden on this motion of demonstrating why this court should vary in this case from its normal procedure. *See* Declarations Procedure ¶ 15(c) (noting that the court will vary the Declarations Procedure upon a showing of good cause). While the court is committed to being flexible in applying the Declarations Procedure, Kuntz must demonstrate some particular reason that the court should not follow the Declarations Procedure. Kuntz cannot rely on general complaints about the process.

## II. ANALYSIS.

As set forth in this court's Declarations Procedure, this court requires all witnesses in civil nonjury trials to submit their direct testimony by way of affidavit or declaration.

Unless otherwise agreed, witnesses must then be made available for live cross-examination and for live redirect examination.

The Declarations Procedure is intended to make this court's civil nonjury trials efficient and orderly. The court has found that this process has worked well in past cases.[1] The submission of written direct testimony, especially when not controverted, has shortened trials. Many witnesses have testified for only a few minutes or have had their testimony accepted without any cross-examination. Besides allowing the introduction of evidence in a succinct manner, the Declarations Procedure allows counsel to present direct testimony in a measured and complete manner and reduces the possibility that vital testimony will fail to be presented.

The court has found that live cross-examination and live redirect examination of witnesses have provided ample opportunity for this court to assess their demeanor and credibility. When parties have chosen not to cross-examine a witness, credibility of that particular witness has not been in question.

Despite the court's reliance on the Declarations Procedure, the court does not adhere to it implacably. The court is prepared to recognize that special circumstances may militate against use of the Declarations Procedure. In those circumstances, the court fully intends to be flexible. Upon a showing that the court should depart from the Declarations Procedure, the court has departed from the procedure in the past, including, in certain respects, in a case in which, before trial, Kuntz's counsel requested a partial departure. *See, e.g.,* Order Regarding Plaintiff's Motion to Clarify Procedures for Trial (filed August 29, 2000) in *O'Donnell v. Maersk Line, Ltd.,* Civil 99–00468 SOM/BMK (modifying the Declarations Procedure). When unexpected matters arise at trial, the court allows witnesses to supplement their written submissions with live direct testimony or to revise their declarations. Such supplementation or revision may occur in a number of circumstances. For example, a witness may

---

1. The Declarations Procedure also allows witnesses who do not speak English well or who have some other impediment to set forth their testimony in a manner that can be easily understood.

be allowed to testify in live direct testimony to rebut something said by another witness earlier in the day, or to lay a foundation for a particular exhibit. The court has allowed counsel to propose revisions to or redactions of declarations in the face of various evidentiary objections or evidentiary rulings, just as counsel could restate or withdraw questions in live testimony. The court has also, upon a proper showing, let more than one hostile witness present live direct testimony.[2]

This is a Jones Act case arising out of alleged injuries to Kuntz while he was employed by Defendants. Kuntz says that he was struck by a boat propeller while giving scuba diving lessons to Defendants' customers in waters off the Portlock area of Oahu. Kuntz requests a blanket exemption from this court's Declarations Procedure. Kuntz fails to demonstrate any need for such an exemption with respect to this case as a whole or as to any given witness. If Kuntz has a specific situation that he thinks warrants departure from the Declarations Procedure, he should put that specific situation before the court. As he has not done that, his motion is denied.

### A. The Declarations Procedure is Authorized by the Federal Rules of Civil Procedure.

Kuntz contends that the Declarations Procedure violates Fed.R.Civ.P. 43(a). Rule 43(a) requires the testimony of witnesses to be taken in open court, "unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise."

The Declarations Procedure is authorized by Fed.R.Evid. 611(a), which states:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time. . . .

Fed.R.Evid. 611(a). In *In re Adair*, 965 F.2d 777 (9th Cir.1992), the Ninth Circuit approved a procedure similar to this court's Declarations Procedure. *Id.* at 779 (pursuant to Rule 611(a), the "use of written testimony is an accepted and encouraged technique for shortening bench trials") (citations and quotation omitted). The Ninth Circuit reasoned that the primary purposes of Rule 43(a) are to ensure that the accuracy of witness statements may be tested by cross-examination and that the trier of fact has a chance to observe the appearance and demeanor of the witness. The Declarations Procedure does not undermine these purposes in any way. The accuracy of each witness statement is assured by the declarant's review and signing of the statement on penalty of perjury. The Declarations Procedure also permits oral cross-examination and oral redirect examination, during which the court can evaluate the declarant's appearance, demeanor, and credibility. *Id.*

Kuntz recognizes that *Adair* authorizes the use of declarations and affidavits in lieu of live direct testimony, but Kuntz argues that *Adair* should be limited to the bankruptcy courts and to situations in which reliance on written testimony in lieu of live direct testimony is not compelled. Kuntz is unpersuasive. Since *Adair*, the Ninth Circuit has approved a district court's *requirement* that declarations or affidavits be submitted in lieu of live direct testimony. *See In re Gergely*, 110 F.3d 1448, 1452 (9th Cir.1997) ("Requiring evidence to be presented by declaration is an accepted and encouraged technique for shortening bench trials that is consistent with Rule 611(a)(2)").[3] Other courts have approved procedures similar to this court's Declarations Procedure outside the bank-

---

**2.** There have also been times in past cases when the court has declined to allow witnesses to supplement their declarations or affidavits. In these situations, however, such supplementation was not necessary or could not have overcome evidentiary objections. For example, when a witness had already stated in his or her declaration that which the party wished to offer by way of supplemental testimony, or when the witness would not have been able to testify based on personal knowledge or without offering inadmissible hearsay, the court did not allow the witness to supplement or revise his or her declaration.

**3.** *Gergely* involved a pretrial order that compelled the presentation of testimony through declarations in lieu of oral evidence. *Id.* at 1451–52.

ruptcy context. *See Saverson v. Levitt*, 162 F.R.D. 407, 410 (D.D.C.1995) ("[r]equiring the parties to submit their direct testimony in writing in lieu of the usual question-and-answer form is sanctioned under the inherent powers of the Court, the Federal Rules of Civil Procedure and the Federal Rules of Evidence").[4] This court's Declarations Procedure does not violate Rule 43(a).

B. *The Declarations Procedure Does Not Involve the Introduction of Inadmissible Hearsay Evidence.*

■ Kuntz argues that the Declarations Procedure allows the introduction of hearsay evidence in violation of Fed.R.Evid. 802 ("Hearsay is not admissible except as provided by these rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress"). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The thrust of Kuntz's argument is that the Declarations Procedure involves hearsay statements because the declarations or affidavits are not actually made while a trial or a hearing is occurring. The court disagrees that the Declarations Procedure requires the introduction of inadmissible hearsay.

If any party lodges a hearsay objection to a declaration, the witness can take the stand in open court, be placed under oath, and then adopt the declaration or affidavit as his or her direct testimony. The witness would then be subject to live cross-examination and redirect examination. Under these circumstances, no hearsay would be involved, as the statement would not have been made "out-of-court." *See Union State Bank v. Geller*, 170 B.R. 183, 186 (Bankr.S.D.Fla.1994) ("The Court finds that calling a witness to the

stand, swearing the witness, having the witness swear or affirm the written declaration is his or her testimony and then turning over the witness for cross examination with right to redirect is the taking of the testimony in open court within the meaning of Fed. R.Civ.P. 43(a)").

Even if a witness is not called to the stand to adopt the declaration, declaration testimony may be received in evidence. While *Adair* noted that declarations used in lieu of live direct testimony fell literally within the definition of hearsay, *see* 965 F.2d at 780, this court notes that such testimony may nevertheless be admissible under the residual exception in Fed.R.Evid. 807. Declarations prepared pursuant to this court's Declarations Procedure have circumstantial guarantees of trustworthiness, especially because the declarants are subject to live cross-examination.[5] Moreover, the parties may waive any hearsay objection with respect to a given witness. For example, the parties may agree that a particular witness need not take the stand merely to state that he or she adopts the declaration.

Without being presented with a specific set of circumstances, this court cannot evaluate whether any particular declaration or affidavit involves inadmissible hearsay. Because the Declarations Procedure does not necessarily involve the introduction of inadmissible hearsay in violation of Rule 802, the court rejects Kuntz's general argument that the Declarations Procedure necessarily injects inadmissible hearsay into the trial.

C. *Kuntz's Attorneys Are Not Placed in an Unethical Position.*

■ Kuntz argues that the Declarations Procedure puts his attorneys in an unethical position. Kuntz contends that an attorney preparing a declaration with a witness must

---

4. Kuntz also complains that, before any other judge in Hawaii, he would be allowed to present live direct testimony. Other federal judges, both those based in Hawaii and visiting, have sometimes required declarations or affidavits in lieu of live testimony. In some of Hawaii's state courts, declarations are used in lieu of live direct testimony in preliminary injunction hearings. In short, this judge is not the first to use declarations in this manner in this jurisdiction.

5. A declaration may be more probative on the point for which it is offered than any other evidence that can be procured through reasonable efforts, such as when a declarant is on the mainland United States or otherwise unavailable for trial and the parties agree that no cross-examination is needed. Certainly if a party does not raise a specific hearsay objection, the court may deem the objection waived.

choose between his duty to the court to provide truthful information and his duty to his client to provide zealous representation. Somehow, Kuntz draws a distinction between the attorney's role during a live examination and the attorney's role under the Declarations Procedure. Kuntz appears to be under the impression that he can rely on the adversarial process during live examination, but not under the Declarations Procedure. The court sees no such distinction. A declaration or affidavit provides the same evidence that an attorney could elicit through live questioning on direct examination. It is then up to the opposing party to cross-examine the witness. Attorneys for Kuntz are under no greater obligation to present evidence harmful to a client under the Declarations Procedure than they would be during a live examination.

The court is at a loss to understand Kuntz's argument that the Declarations Procedure forces his attorneys to "create" evidence by requiring them to decide what to include and what to omit from a declaration. Attorneys consider exactly the same issues in deciding what to ask and what not to ask during live testimony. Presumably counsel who questions a live witness is well aware from discovery what counsel may justifiably expect the witness to say. Counsel has the same background with the witness when drafting a declaration. With both live testimony and a declaration, a witness may refuse to state what counsel anticipates. The ethics of the situation simply do not change depending on the medium.

D. *Lay Witnesses.*

■ Kuntz complains that the Declarations Procedure increases the amount of trial preparation required of counsel and lay witnesses. Thorough trial preparation is hardly a detriment. Moreover, trial preparation saves time during trial, and ensures a clear, comprehensive, and focused presentation. The result is increased quality as well as efficiency.

Nor does an attorney's role in drafting a declaration create the undue complications envisioned by Kuntz. Kuntz argues that, if a witness is impeached, the attorney who helped to prepare the declaration is also impeached. The court disagrees. Pursuant to 28 U.S.C. § 1746, each witness must state under penalty of perjury that his or her statements are true and correct. Every declaration is a statement by the witness, not the attorney, as it is adopted by the witness when the witness executes it. A person may conceivably change his or her story on cross-examination or claim that his or her declaration is only the drafting attorney's version of what happened or is in error. But if that happens, the credibility of that witness, not of the drafting attorney, is put in issue. Even if a witness testifies that an attorney convinced the witness to lie or perform some other unethical act in the declaration submitted to the court, the attorney's credibility is no more in issue than it would be if a witness testifying live said one thing, then retracted it on cross-examination by saying that the earlier live direct testimony was what counsel had urged him to say.[6]

Again, the court is prepared to depart from the Declarations Procedure when appropriate. The court can imagine, for example, being persuaded that, in a particular case, a child witness should be allowed to present live direct testimony to avoid the trauma of beginning with cross-examination. In general, however, the court expects that beginning live testimony with cross-examination will not unduly affect the typical witness. The typical witness will know that the court will begin hearing live cross-examination with the clear written statement of the witness already in mind. The typical witness will also recognize that other witnesses are subject to the same circumstance of presenting their first live testimony on cross-examination, so that the typical witness does not fall under a unique disadvantage.

**6.** Nor is Kuntz persuasive in arguing that the Declarations Procedure will allow cross-examination into work product or attorney-client privilege matter. Those privileges are neither expanded nor contracted by the Declarations Procedure and have the same force and effect with declarations as they do when an attorney meets with a witness in preparation for live testimony.

### E. *Testimony of Professionals.*

In addition to the arguments made above, Kuntz complains that professionals, particularly physicians, are reluctant to devote substantial time to preparing declarations. Physicians are usually deposed before trial, so the attorneys can draft the physician's declarations based on the deposition testimony and medical records. The time required of a physician to read and revise a declaration drafted by counsel should take less of the physician's time than a meeting or telephone conversation to prepare for trial testimony. Even when a physician declines to meet with counsel to prepare for testifying at trial, the physician saves time by reviewing a declaration, as the trial time for the physician is considerably shortened. And, of course, the physician is compensated for his or her time in any event.

The court recognizes that some professionals in this jurisdiction, particularly surgeons, may refuse even to review a draft of a declaration before trial. Some witnesses will only devote time to a legal matter when they are under subpoena, as at deposition or trial. Assuming, of course, that a party faced with calling such a witness has not procured or encouraged a refusal by the witness to review a declaration, the party may present the matter to the court for consideration of whether the Declarations Procedure should be modified with respect to the witness. Nothing in Kuntz's motion indicates that Kuntz intends to call a witness who is refusing to review a declaration, or that this perceived problem is really in issue in this case.[7]

Kuntz argues that any savings in time is not reflected in a savings of money, because professionals may charge the party calling them as witnesses for a half-day of live testimony even if their live testimony time is reduced by the Declarations Procedure to less than half a day. Kuntz overlooks the possibility that a professional might otherwise charge for a full day, so that the Declarations Procedure might well result in economy of both time and money. The Declarations Procedure reduces the time required of any professional because reviewing a declaration takes less time than testifying live on direct examination.

### F. *Hostile Witnesses.*

Although the Declarations Procedure contains special conditions for hostile witnesses, Kuntz worries that those conditions are unworkable. The court's experience does not bear out Kuntz's concerns.

Hostile witnesses sometimes sign declarations prepared by opposing counsel. In those instances, the drafting attorney works closely with counsel for the witness in negotiating exactly what the witness will sign, usually based on deposition testimony. If a hostile witness refuses to sign a declaration, a party may submit deposition designations containing the same material the party unsuccessfully attempted to obtain by way of a declaration. When neither a declaration nor deposition testimony suffices, the court will entertain alternatives. For example, if, after deposing a hostile witness, a party acquires new information but the hostile witness refuses to sign a declaration containing the new material, the party may request permission to supplement deposition designations with live direct testimony by the hostile witness regarding the additional evidence.

Kuntz also objects to the use of the Declarations Procedure with hostile witnesses on the ground that the procedure requires an attorney drafting a declaration for a hostile witness to "lay out in detail for the hostile witness, step-by-step, the damaging information he or she would seek from the witness at trial." Kuntz says the procedure gives the witness "a complete road map to the entire examination" and "undermin[es] entirely its effectiveness." Kuntz's fears will rarely, if ever, be justified. An attorney drafting a declaration for a hostile witness would usually draft the declaration to be as favorable to the drafting attorney's client as possible. If

---

**7.** The court does not conclude here that a witness who refuses to review a declaration before trial must necessarily be allowed to present live direct testimony. Possibly, the witness, upon appearing in court pursuant to a subpoena, could be directed to review the declaration at that time. The witness might conceivably adopt and sign the declaration as his or her direct testimony immediately before taking the witness stand.

the hostile witness signs the declaration, the damaging impeachment testimony is of no use. It would be extraordinary for impeachment to be included in a proposed declaration of any witness, hostile or not. Instead, impeachment evidence would usually be reserved for live redirect examination, to be offered only if warranted because a witness has been rehabilitated during live cross-examination.

In the rare circumstance that might justify inclusion of impeachment material in a declaration, the party may ask for an in camera review of the evidence so that the court may consider whether to depart from the Declarations Procedure.[8] Kuntz shows no such rare circumstance here.

### G. *Damages.*

■ Kuntz believes that this court cannot fairly evaluate his damages based upon the "cold written word," especially if Defendants choose not to conduct live cross-examination of him on those damages. But, articulately presented, the written word can be as powerful, and sometimes even more powerful, than the spoken word. Kuntz mischaracterizes the Declarations Procedure when he refers to the court's "apparent unwillingness" to listen to heart-wrenching testimony and suggests that the court does not care about the parties. This court is not refusing to let parties be heard. This court is only requiring that their direct testimony be written. A well-crafted declaration such as Kuntz's counsel is more than capable of drafting can movingly convey the full extent of pain and

suffering Kuntz claims to have suffered. In the alternative, a declaration may be in the party's own words without the assistance of counsel.

A party is always able to seek leave to depart from the Declarations Procedure for good cause. The court can imagine that it might need to hear live direct testimony by a plaintiff claiming damage to speech functions, for example. The court might need a demonstration on live direct examination of how a plaintiff's mobility has been impaired. Conceivably, photographs and written testimony may not fully convey disfigurement. In appropriate circumstances, the court may allow limited live direct testimony to supplement declarations.

The court can also imagine that, in certain circumstances, emotional distress will so debilitate a party that the court may need live direct testimony to assess that damage.[9] In the typical case, however, the court can make its assessment based on written direct testimony, live cross-examination, and live redirect testimony. Kuntz makes no showing that his is a case in which this is not possible.

Kuntz complains that he will be unable to testify live about his damages if Defendants do not cross-examine him on that subject. Kuntz may submit a declaration stating anything that he could testify about orally. If the defense fails to cross-examine Kuntz on damages, far from being disadvantaged, Kuntz may well benefit from the absence of a direct attack. Kuntz does not establish a specific need to depart from the Declarations Procedure based on this argument.

8. Kuntz argues that, absent a departure, a party cannot take advantage of Fed.R.Civ.P. 32(a)(2). Rule 32(a)(2) authorizes the use of deposition testimony for any purpose when the deponent is a party or someone who, at the time of the taking of the deposition, was a party's officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party that is a public or private corporation, partnership, association, or governmental agency. The Declarations Procedure does not trump this rule, and deposition testimony of an opposing party may be used as freely in a declaration or affidavit as in live testimony.

9. The court is conscious that, in singling out damage testimony for special concern, Kuntz may be implicitly acknowledging that the Declarations Procedure may help him to present his

liability case clearly, carefully, and articulately. When liability is hotly contested, all parties may well appreciate the control that the Declarations Procedure provides over the presentation of what may be their delicate or complex liability positions. The court is concerned that parties not seek to swing from one procedure to another to benefit themselves with respect to particular issues. Thus, if, for example, a plaintiff in a case argues that her emotional distress has rendered her totally unable to function in a coherent or logical manner and that the court can only comprehend this injury through live direct testimony, the court might not allow her to present only live damage testimony. The court might require that she also present her liability testimony live, which might not be her preference.

### III. CONCLUSION.

Because Kuntz has not met his burden of showing good cause for this court to depart from the Declarations Procedure in this case, his motion is denied. In so ruling, the court does not intend to signal that it will never depart from the Declarations Procedure. The court has departed in the past and is likely to do so in the future. The present ruling only reflects a failure by Kuntz to establish good cause for a departure in his motion. There may well be cases in which the Declarations Procedure should not be used at all,[10] but Kuntz does not show that this is such a case.

IT IS SO ORDERED.

### APPENDIX A

(Excerpt from Procedures For Trials Before Judge Susan Oki Mollway)

**15. Additional instructions for civil non-jury trials and civil nonjury evidentiary hearings (e.g., preliminary injunction hearings involving live evidence):**

**a. Written submissions by parties:** In a civil nonjury trial or a civil nonjury evidentiary hearing, each party must file its proposed findings of fact and conclusions of law at least three working days before the start of the trial or hearing, and must deliver to chambers two extra copies of the document together with a computer disk containing the document in ASCII or Word Perfect 8 or lower format. The findings and conclusions shall be in numbered paragraphs, with authority stated for each paragraph (e.g., name of witness, exhibit number, case citation, etc.). No later than two working days before the trial begins, the parties will file a set of any facts to which they have stipulated. In addition, no later than 4:30 p.m. on the working day before a witness is to be called, the party calling the witness shall file and provide the court and opposing counsel with a declaration setting forth the direct testimony of the witness. The declaration shall be in lieu of live testimony. The witness shall be available the next day for live cross-examination, unless the opposing counsel stipulates that no cross-examination is requested. An out-of-state witness may be cross-examined by telephone or video only with leave of court. The court encourages the parties to enter into an agreement that permits cross-examination to be presented by an additional declaration of the witness, rather than by questions and answers. The parties may orally raise appropriate objections to declaration testimony on the day the witness is to appear for cross-examination, but the parties are urged to try to resolve any objections by agreement.

**b. Hostile witnesses:** If a party wishes to call a hostile witness or a nonparty witness, the party seeking to call such a witness must attempt to obtain a declaration from that witness. Upon a showing by the party that it is unable to obtain a declaration, the court will permit deposition testimony to be designated in lieu of a declaration. Cross-examination and redirect examination will be by cross-designations of deposition testimony unless (a) the cross-examining party makes a showing that effective cross-examination is not possible through cross-designation (for example, if counsel examined a witness only for discovery, not preservation, purposes and therefore has reserved matters for trial), or (b) the party calling the witness makes a showing as to why the cross-examining party should not be permitted to use deposition testimony as its cross-examination. Upon such a showing, cross-examination may be live, by video, or by telephone, as ordered by the court.

**c. Waiver:** The above requirements will be waived by the court only upon a showing of good cause. Any waiver must be sought in a written motion filed no later than ten working days before trial begins.

**d. Exhibits:** No exhibit will be deemed received in evidence unless expressly offered by a party and received by the court. That is, exhibits attached to deposition transcripts or declarations are not automatically received

---

10. For example, the court's consideration of a total departure from or modification of the Declarations Procedure might conceivably be justified in a very high profile case to accommodate the public's great interest in the outcome of the case and issues of public confidence in and understanding of proceedings to which the public is not a party. This is not such a case.

in evidence simply because they are so attached, even if the deposition testimony or the text of the declaration is included in the trial record. The deposition testimony and declarations should be considered equivalent to live testimony, and just as exhibits mentioned in live testimony would not automatically be in evidence, attachments to the depositions and declarations are not automatically in evidence.

**e. Court's ruling:** The court's findings of fact and conclusions of law will usually be placed orally on the record in open court as soon as possible after the evidentiary proceeding has concluded. Parties and counsel will be notified of, but not required to be present for, the announcement of findings and conclusions. In many civil nonjury proceedings, written findings and conclusions will not thereafter be filed, and the transcript of the oral findings and conclusions will then serve as the formal record of the findings and conclusions.